# UNITED STATES DISTRICT COURT
# DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| DEREK FENLON, individually and on behalf of all others similarly situated,<br><br>v.<br><br>NICKELBACK TRANSPORT, INC. | **Case No.**<br>Rule 23 Class Action<br>FLSA Collective Action |

## CLASS/COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Derek Fenlon brings this lawsuit to recover unpaid overtime wages and other damages from Nickelback Transport, Inc. ("Nickelback") under the Fair Labor Standards Act (29 U.S.C. § 201, *et seq.*) ("FLSA"), and North Dakota Century Code 34 and the North Dakota Minimum Wage and Work Conditions Order (N.D. Admin Code § 46-02-07-01, *et seq.*) (together, the "ND Wage Laws").

2. Fenlon and other similarly situated employees were truck drivers transporting materials to and from oilfield sites within the State of North Dakota, but were not paid for all the overtime hours they worked, as Nickelback only paid straight time for all hours worked. Moreover, Nickelback would also shave its employees' overtime hours to reduce or eliminate Nickelback's overtime obligations.

3. This practice of shaving hours continued even after Nickelback's employees complained about Nickelback stealing their hours. Shawn Holdaway, Nickelback's President, responded that he was only going to pay his employees for "billable" time, and/or that he didn't have to pay his drivers for time spent driving from a job site back to Nickelback's yard.

4. This collective action seeks to recover the unpaid overtime wages and other damages owed to Nickelback's employees under the FLSA.

## JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Plaintiff's claims under the ND Wage Laws form part of the same case or controversy as his FLSA claims under Article III of the United States Constitution. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

8. Fenlon performed work for Nickelback in this Judicial District.

## THE PARTIES

9. Fenlon worked for Nickelback from October 28, 2015 to June 28, 2019.

10. Fenlon was employed by Nickelback as a driver.

11. Fenlon was paid by the hour.

12. Fenlon was a non-exempt employee during his employment with Nickelback.

13. Fenlon's written consent is attached as Exhibit A.

14. Fenlon represents at least two classes of similarly situated co-workers.

15. Fenlon represents a class of similarly situated workers under § 16(b) of the FLSA. *See* 29 U.S.C. § 216(b). This FLSA class is defined as:

> **Current and former drivers employed by Nickelback Transport, Inc. in the past three years who were paid straight time for overtime and/or whose hours were shaved by Nickelback.**

16. Fenlon represents a class of similarly situated workers under the ND Wage Laws pursuant to Federal Rule of Civil Procedure 23. This North Dakota Class is defined as:

>  **Current and former drivers employed by Nickelback Transport, Inc. in the past three years who were paid straight time for overtime and/or whose hours were shaved by Nickelback.**

17. Collectively, the FLSA Class Members and the North Dakota Class Members are referred to as "Putative Class Members."

18. Nickelback Transport, Inc. is an Idaho corporation that does business in this District. It may be served by serving its registered agent for service of process, Search Company of North Dakota, LLC 1709 N 19th St., Suite 3, Bismarck, ND 58501-2121.

## COVERAGE UNDER THE FLSA

19. At all relevant times, Nickelback has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all relevant times, Nickelback has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all relevant times, Nickelback has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

## FACTS

22. Nickelback transports fresh water, production water, and flowback water to and from various oilfield sites in North Dakota.

23. Nickelback employs drivers to perform its oilfield transport services.

24. Many of these individuals worked for Nickelback performing the same or substantially similar job duties as Fenlon.

25. While exact job titles and job duties may slightly differ, Fenlon and the Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

26. Specifically, Nickelback paid Fenlon and the Putative Class Members the same hourly rate for all hours worked, even those in excess of 40 hours in a workweek. Additionally, Nickelback would also shave or steal hours from its drivers to reduce or even eliminate its overtime obligations.

27. Nickelback controlled all the significant or meaningful aspects of the job duties performed by Fenlon and the Putative Class Members.

28. Nickelback controlled the hours and locations Fenlon and the Putative Class Members worked, and the rate of pay received.

29. Fenlon and the Putative Class Members were all paid on an hourly basis and consistently worked between 60 and 90 hours per week.

30. The Putative Class Members performed substantially similar job duties to Fenlon related to hauling materials to and from oil and gas operations in the field.

31. The Putative Class Members also worked similar hours and were denied overtime premiums as a result of the same illegal pay practices experienced by Fenlon.

32. Instead of paying them overtime, Nickelback paid Fenlon and the Putative Class Members the same hourly rate for all hours worked. Nickelback also shaved their hours.

33. Nickelback denied Fenlon and the Putative Class Members an overtime premium for any hours worked in excess of 40 hours in a single workweek.

34. Nickelback's straight-time-for-overtime policy and its time shaving policy are both clear violations of the FLSA.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

35. Fenlon incorporates all preceding paragraphs.

36. The illegal pay practices Nickelback imposed on Fenlon were likewise imposed on the Putative Class Members.

37. Numerous other individuals who worked with Fenlon were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA and ND Wage Laws. Upon information and belief, the Putative Class Members are so numerous as to make their joinder in this action impracticable.

38. Thus, Nickelback imposed a uniform practice or policy on Fenlon and the Putative Class Members regardless of any individualized factors.

39. Based on his experiences and tenure with Nickelback, Fenlon is aware that Nickelback's illegal practices were imposed on the Putative Class Members.

40. Putative Class Members were not paid overtime premiums for any hours worked over forty per week, and their hours were shaved or cut by Nickelback.

41. Nickelback's failure to pay wages and overtime compensation at the rates required by the FLSA and ND Wage Laws result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

42. Fenlon's experiences are therefore typical of the experiences of the Putative Class Members.

43. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

44. Fenlon has no interest contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, Fenlon has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

45. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

46. Absent this action, many Putative Class Members likely will not obtain redress for their injuries and Nickelback will reap the unjust benefits of violating the FLSA and ND Wage Laws.

47. Furthermore, even if some of the Putative Class Members could afford individual litigation against Nickelback, it would be unduly burdensome to the judicial system.

48. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

49. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   (a) Whether the Putative Class Members had their hours illegally shaved or reduced by Nickelback;

   (b) Whether the Putative Class Members were paid overtime at one and one half their regular rate of pay for hours worked in excess of 40 in a workweek;

   (c) Whether Nickelback's decision to not pay overtime to the Putative Class Members was made in good faith and on reasonable grounds; and

   (d) Whether Nickelback's violation of the FLSA was willful.

50. Fenlon's claims are typical of the Putative Class Members claims. Fenlon and the Putative Class Members Class Members have sustained damages arising out of Nickelback's illegal and uniform employment policy.

51. Fenlon knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

52. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—FLSA VIOLATIONS

53. Fenlon incorporates all preceding paragraphs.

54. As set forth herein, Nickelback violated the FLSA by failing to pay Fenlon and the Putative Class Members overtime at a rate not less than time and one-half their regular rates of pay for all hours worked in excess of 40 in a workweek, 29 U.S.C. § 207(a), and in shaving the hours of Fenlon and the Putative Class Members.

55. Nickelback knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Fenlon and the Putative Class Members proper overtime compensation.

56. Nickelback's shaving of overtime hours and its failure to pay overtime premiums to Fenlon and the Putative Class Members was neither reasonable nor made in good faith.

57. Accordingly, Fenlon and the Putative Class Members are entitled to overtime wages in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION—ND WAGE LAWS VIOLATIONS

58. Fenlon incorporates all preceding paragraphs.

59. The conduct alleged in this Complaint violates the ND Wage Laws.

60. Nickelback was and is an "employer" within the meaning of the ND Wage Laws.

61. At all relevant times, Nickelback employed each member of the North Dakota Class as an "employee" within the meaning of the ND Wage Laws.

62. The ND Wage Laws requires employers to pay overtime premiums to all non-exempt employees.

63. The members of the North Dakota Class were and are non-exempt employees who are entitled to be paid overtime premiums for all overtime hours worked.

64. Within the applicable limitations period, Nickelback had a policy and practice of failing to pay overtime premiums to the North Dakota Class members for their hours worked in excess of 40 hours per week.

65. Within the applicable limitations period, Nickelback had a policy and practice of shaving the hours of the North Dakota Class members.

66. As a result of Nickelback's failure to pay overtime to the North Dakota Class, and as a result of its time shaving practices, Nickelback violated the ND Wage Laws.

67. The North Dakota Class is entitled to recover their unpaid overtime based on Nickelback's failure to pay 1.5 times their regular rates of pay for work performed in excess of 40 hours in a week, an amount equal to these underpayments as liquidated damages, and such other legal and equitable relief resulting from their violations of the ND Wage Laws as the Court deems just and proper.

68. The North Dakota Class also seeks recovery of attorneys' fees and costs of this action to be paid by Nickelback, as provided by the ND Wage Laws.

## RELIEF SOUGHT

69. Wherefore, Fenlon prays for judgment against Nickelback as follows:

    (e) For an order certifying this case as a collective action pursuant to 29 U.S.C. §216(b) for the purposes of the FLSA claims;

(f)     For an order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23 for the purposes of the ND Wage Laws claims;

(g)     For an order finding Nickelback liable for violations of state and federal wage laws with respect to Fenlon and all Putative Class Members covered by this case;

(h)     For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to Fenlon and all Putative Class Members covered by this case;

(i)     For a judgment awarding Fenlon and all Putative Class Members covered by this case their attorneys' fees, costs, and expenses of this action;

(j)     For a judgment awarding Fenlon and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(k)     For all such other and further relief as may be necessary and appropriate.

Respectfully Submitted,

**MORELAND VERRETT, P.C.**
700 West Summit Drive
Wimberley, Texas 78676
Tel: (512) 782-0567
Fax: (512) 782-0605

By: */s/ Douglas B. Welmaker*
       Douglas B. Welmaker
       Texas State Bar No. 00788641
       doug@morelandlaw.com

Edmond S. Moreland, Jr.
Texas State Bar No. 24002644
**MORELAND VERRETT, P.C.**
700 West Summit Dr.
Wimberley, TX 78676
Phone  512 782 0567
Fax     512 782 0605
doug@morelandlaw.com

**ATTORNEYS FOR PLAINTIFFS**